No. 23-1320

---

**UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

---

STATE OF ARKANSAS et al.,
Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al.
Respondents.

---

On Petition for Review of an Agency Action
of the United States Environmental Protection Agency

---

**Petitioners' Response to Respondents' Motion to Transfer or Dismiss**

---

TIM GRIFFIN
  Arkansas Attorney General

NICHOLAS J. BRONNI
  Arkansas Solicitor General

DYLAN L. JACOBS
  Deputy Solicitor General

ASHER STEINBERG
  Senior Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-1051
asher.steinberg@arkansasag.gov

## INTRODUCTION

This petition seeks review of EPA's disapproval of Arkansas's state implementation plan, or SIP, for addressing ozone emissions that travel to other States. Without exception, such petitions have always been heard in the regional circuits, including this one. Yet EPA now moves to transfer the petition to the D.C. Circuit, alternatively claiming its disapproval of Arkansas's plan is a "nationally applicable" action exclusively reviewable there, 42 U.S.C. 7607(b)(1), or that its disapproval of Arkansas's plan is at least "based on a determination of nationwide scope" and therefore exclusively reviewable there, *id.* It is wrong on both scores.

Beginning with the obvious, EPA's disapproval of Arkansas's plan is not a nationally applicable action. The Clean Air Act's venue provision says as much: "any denial or disapproval" of a SIP is a "locally or regionally applicable" action, only reviewable in the appropriate regional circuit. *Id.* EPA says this disapproval is different because it was published in the Federal Register alongside other SIP disapprovals. But "any" disapproval means any disapproval, no matter the document containing it.

Recognizing the weakness of its lead argument, EPA then suggests its disapproval was a locally applicable action, but was based on a "common core" of consistent statutory interpretations and policy judgments that it applied to all SIPs.

i

Mot. 14 (quoting 88 Fed. Reg. 9,336, 9,380 (Feb. 13, 2023)). Thus, it argues, the disapproval was "based on a determination of nationwide scope or effect" and exclusively reviewable in the D.C. Circuit under the exception for locally applicable actions that have such a basis. But that exception cannot have so broad a meaning. Every EPA action on SIPs, absent profoundly arbitrary action, is based on *some* consistent statutory interpretation or policy choice; EPA may not interpret the Clean Air Act anew with each SIP it sees.

Instead, the text, structure, and history of the venue statute show that its exception for nationwide determinations is limited to those determinations that automatically preordain some mass up-or-down action on SIPs, without regard to state-specific considerations. Far from having that effect, the "common core" of interpretations and policy choices EPA applied here, when applied to each State's individual emissions and circumstances, split the nation down the middle, resulting in twenty-odd approvals and twenty-odd disapprovals. So EPA's disapproval of Arkansas's SIP does not fall within the exception to the rule, and this Court must retain jurisdiction over EPA's locally applicable action.

Introduction .......................................................................................... i

Table of Contents ............................................................................... iii

Table of Authorities ............................................................................ iv

Statement ............................................................................................ 1

    A.  Statutory background ............................................................. 1

        1.  The good-neighbor provision. ......................................... 1

        2.  The Clean Air Act's venue provision. ............................. 2

    B.  EPA's disapproval of Arkansas's SIP. ................................. 3

        1.  EPA's pre-submission guidance. .................................... 3

        2.  Arkansas's SIP. ............................................................... 4

        3.  EPA's new modeling. ...................................................... 5

        4.  EPA's proposed disapproval. .......................................... 6

        5.  EPA's disapproval of Arkansas's SIP ............................. 8

Argument ........................................................................................... 11

  I.  EPA's disapproval of Arkansas's SIP was not a nationally
     applicable action. ................................................................. 11

  II.  EPA's disapproval of Arkansas's SIP was not based on a
     determination of nationwide scope or effect. ....................... 15

Conclusion ........................................................................................ 22

Certificate of Compliance ................................................................. 23

Certificate of Service ........................................................................ 24

Appellate Case: 23-1320    Page: 4    Date Filed: 04/06/2023 Entry ID: 5262819

# TABLE OF AUTHORITIES

## Cases

*Ali v. Fed. Bureau of Prisons,*
   552 U.S. 214 (2008)................................................................11

*Am. Road & Transp. Builders Ass'n v. EPA,*
   705 F.3d 453 (D.C. Cir. 2013)..............................................12

*ATK Launch Sys. v. EPA,*
   651 F.3d 1194 (10th Cir. 2011) ............................................13

*Cedar Falls Utils. v. EPA,*
   No. 16-4504 (8th Cir. Feb. 22, 2017) ...................................13

*Dayton Power & Light Co. v. EPA,*
   520 F.2d 703 (6th Cir. 1975) ..........................................19, 21

*Encino Motorcars, LLC v. Navarro,*
   579 U.S. 211 (2016)........................................................ 17-18

*Flora v. United States,*
   362 U.S. 145 (1960)..............................................................12

*Harrison v. PPG Indus.,*
   446 U.S. 578 (1980)........................................................ 11-12

*Ill. Power Coop. v. EPA,*
   863 F.3d 666 (7th Cir. 2017) ................................................14

*Knight v. Comm'r,*
   552 U.S. 181 (2008)..............................................................18

*Nat'l Parks Conservation Ass'n v. McCarthy,*
   816 F.3d 989 (8th Cir. 2016) ................................................12

*North Dakota v. EPA,*
   730 F.3d 750 (8th Cir. 2013) ..................................................1

*NRDC v. EPA,*
   465 F.2d 492 (1st Cir. 1972)...........................................19, 21

*Sierra Club v. EPA,*
   47 F.4th 738 (D.C. Cir. 2022)........................... 12, 14, 16-17

iv

Appellate Case: 23-1320    Page: 5    Date Filed: 04/06/2023 Entry ID: 5262819

*So. W. Va. Chamber of Com. v. Browner*,
No. 98-1013, 1998 WL 827315 (4th Cir. Dec. 1, 1998) ....................................14

*Texas v. EPA*,
829 F.3d 405 (5th Cir. 2016) ................................................................12, 16, 18

## Statutes and Legislative Materials

42 U.S.C. 7409 ..........................................................................................................1

42 U.S.C. 7410 ..........................................................................................1, 2, 8, 11

42 U.S.C. 7410(a)(1) ................................................................................................3

42 U.S.C. 7410(a)(2)(D)(i)(I) ...............................................................................1, 3

42 U.S.C. 7607(b)(1)........................................................................................*passim*

Clean Air Act Amendments of 1970,
Pub. L. No. 91-604, sec. 12(a), 84 Stat. 1676, 1707................................... 18-19

Clean Air Act Amendments of 1977,
Pub. L. No. 95-95, sec. 305(c)(1)(4), 91 Stat. 685, 776 ....................................20

## Regulations and Agency Materials

Envtl. Prot. Agency, *2016v2 Platform* (Jan. 19, 2022)
https://www.epa.gov/air-emissions-modeling/2016v2-platform.........................5

*Miscellaneous Amendments*,
41 Fed. Reg. 56,767 (Dec. 30, 1976)..........................................................19, 21

*National Ambient Air Quality Standards for Ozone*,
80 Fed. Reg. 65,292 (Oct. 26, 2015) ..................................................................3

## Rules

Fed. R. App. P. 15(a)(2)(C) ....................................................................................15

## Other Authorities

David P. Currie, *Judicial Review Under Federal Pollution Laws*,
62 Iowa L. Rev. 1221 (1977)...............................................................................19

H.R. Rep. No. 95-294 (1977) ...............................................................................20

v

**A.     Statutory background**

**1.     The good-neighbor provision.**

The Clean Air Act "sets forth a basic division of labor" between the States and the federal government.  *North Dakota v. EPA*, 730 F.3d 750, 757 (8th Cir. 2013).  The EPA sets air quality standards—national ambient air quality standards, or NAAQS—that set maximum levels for major pollutants in the air.  42 U.S.C. 7409.  The States, in turn, are assigned "the primary role of determining the appropriate pollution controls within their borders."  *North Dakota*, 730 F.3d at 760-61.  Under the Act, they exercise that role by preparing state implementation plans, or SIPs.  42 U.S.C. 7410.

One of the ways the Clean Air Act implements the NAAQS is through the good-neighbor provision.  It requires SIPs to contain provisions that prevent the State's emissions from "contribut[ing] significantly to nonattainment in, or interfer[ing] with maintenance by, any other State" with respect to the various NAAQS.  *Id.* 7410(a)(2)(D)(i)(I).  The Act does not define what it means to "contribute significantly."  As EPA explains in its motion, however, it has implemented that standard in numerous actions, including the SIP disapproval challenged here, under a four-step framework.  Mot. 5-6.  Arkansas does not

1

challenge that framework here, but only certain details of its application to Arkansas. *See* Pet'rs Mot. for Stay (Mar. 31, 2023).

### 2. The Clean Air Act's venue provision.

The Clean Air Act exclusively assigns venue over any action the EPA takes under it to "a single [circuit]." Mot. 4. It divides CAA actions into three categories and assigns them a venue accordingly.

First, "nationally applicable regulations" and "final action[s]" are reviewed in the D.C. Circuit. 42 U.S.C. 7607(b)(1). For example, the EPA's action "in promulgating any [NAAQS]" is reviewed there. *Id.*

Second, any "final action" under the Act that "is locally or regionally applicable may be filed only in . . . the appropriate circuit." *Id.* EPA concedes "appropriate circuit" means "the appropriate regional circuit." Mot. 4. The first example Section 7607 gives of this category of action is EPA's "action in approving or promulgating any implementation plan under section 7410," the section under which EPA *disapproved* Arkansas's implementation plan; the last example it gives is "any denial or disapproval by the Administrator under subchapter I," in which Section 7410 is codified. 42 U.S.C. 7607(b)(1).

Third, Section 7607(b)(1) provides that "[n]otwithstanding [its] preceding sentence" assigning locally or regionally applicable actions to regional circuits, an action "referred to in [that] sentence" may be reviewed only in the D.C. Circuit if it

2

is "based on a determination of nationwide scope or effect," *and* if the EPA makes a finding that the action is "based on such a determination." *Id.* In sum, then, SIP approvals or disapprovals are reviewed in regional circuits, but are reviewed in the D.C. Circuit if they are based on a determination of nationwide scope or effect, and if the EPA finds they are.

### B. EPA's disapproval of Arkansas's SIP.

On October 1, 2015, EPA announced it was lowering the ozone NAAQS to 70 parts per billion (ppb). 80 Fed. Reg. 65,292 (Oct. 26, 2015). That action triggered a deadline for Arkansas to revise its ozone SIP—and to estimate whether Arkansas made significant contributions to non-attainment of the new NAAQS in downwind states. 42 U.S.C. 7410(a)(1), (a)(2)(D)(i)(I).

#### 1. EPA's pre-submission guidance.

On March 27, 2018, six months before SIPs were due, EPA shared what were then its most recent "contribution modeling data for 2023 to assist states in evaluating their impact on potential downwind air quality problems for the 2015 ozone NAAQS[.]" 88 Fed. Reg. at 9,339. That modeling of states' contributions "project[ed]" measurements from 2009 to 2013 forward "to 2023." App'x 004. In that guidance, EPA did not instruct States they were required to use its modeling, but said they could use it if they wished. App'x 006. According to that modeling, out of all the sites in the country projected to potentially fall above the 70-ppb

3

ozone standard in 2023, Arkansas would contribute 1 ppb of ozone to just one—Allegan County, Michigan.  87 Fed. Reg. 9,798, 9,804 (Feb. 22, 2022).

After EPA issued those projections, it "provide[d] recommendations for states" about what thresholds to use in determining whether their contributions to downwind States were significant or not.  App'x 021.  EPA analyzed how much upwind contributions to nonattainment would be captured if States used a 1 ppb threshold instead of a 1%-of-the-NAAQS, or 0.7 ppb, threshold.  EPA found that allowing states to use 1 ppb would capture only 7% less contributions than a 1% threshold would.  App'x 024.  On that basis, EPA advised States the two thresholds were "generally comparable" and that "it may be reasonable and appropriate for states to use a 1 ppb contribution threshold."  *Id.*

### 2. Arkansas's SIP.

Armed with this guidance and data, Arkansas set about preparing its SIP. On October 4, 2019, Arkansas submitted its SIP to EPA.  App'x 029. In that SIP, Arkansas concluded it was not a significant contributor to downwind nonattainment in any State.

First, Arkansas agreed with EPA that a 1 ppb threshold was a reasonable screen for significance.  App'x 039.  That left just one non-attaining site in the country to which EPA projected Arkansas would contribute significantly—Allegan County, Michigan.  In 82 pages of painstaking technical analysis of air flows

4

between Arkansas and that faraway county, the Arkansas Division of Environmental Quality (ADEQ) concluded that Arkansas did not significantly contribute to ozone levels there. App'x 042-123. Simply put, "there [wa]s not a consistent or persistent pattern of air flow through Arkansas to Allegan County." *Id.* Accordingly, ADEQ concluded that no additional controls were needed to satisfy Arkansas's good-neighbor obligations under the new ozone NAAQS. App'x 123.

### 3. EPA's new modeling.

Nearly two years later, on September 21, 2021, EPA released a new ozone transport model, "2016v2." App'x 337. As the model's name suggests, it used data centered around 2016 (the years 2014 to 2018) instead of data from 2009 to 2013, like the modeling in EPA's 2018 guidance to States. 88 Fed. Reg. at 9,339. But EPA did not state at that time that it would use 2016v2 in rulemaking on the new NAAQS. Nor did it give States the all-important *results* of the model— estimated contributions of ozone to downwind States.

Four months later, on January 19, 2022, it released those results on its website, *id.*, with the statement that, "[w]hile these data do not reflect any policy or regulatory decisions, EPA expects to use this information in upcoming rulemaking actions, including ozone transport actions." Environmental Protection Agency, *2016v2 Platform*, https://www.epa.gov/air-emissions-modeling/2016v2-platform.

5

### 4. EPA's proposed disapproval.

Expectations became reality just 13 days later when, on February 1, 2022, EPA's Region 6 published its proposed disapproval of Arkansas's SIP, based on EPA's fresh-off-the-shelf projections. 87 Fed. Reg. at 9,811. The proposed rule was signed by Region 6's Regional Administrator, and appeared in a proposed rule that included proposed disapprovals for three other Region 6 States, including Texas. *Id.* at 9,798, 9,835. And the notice provided that "all public comments, including comments on the EPA's [new] air quality modeling should be submitted in the Regional docket for this action." *Id.* at 9,806 n.45. The "Regional docket" in which EPA invited comment "contain[ed] information specific to Arkansas." *Id.* at 9,798.

In the proposed rule, Region 6 said that ADEQ's painstaking analysis of Arkansas's contributions to Allegan County was beside the point. For it now projected that Allegan County would "be attaining . . . in 2023." 87 Fed. Reg. at 9,808. Instead, citing EPA's new modeling Region 6 forecast that Arkansas would contribute 1 ppb to four sites at risk of nonattainment in another Region 6 state, Texas, and just over 1% of the NAAQS, 0.76 ppb, to a fifth Texas site. *Id.* None of these sites were previously identified as receiving 1 ppb of ozone from Arkansas. And only one was even identified in the 2018 modeling under the more

6

stringent 1% threshold EPA previously suggested States could depart from. *Id.* at 9,804.

Nevertheless, solely "based on [those] EPA model 2016v2 results," *id.* at 9,808, Region 6 proposed determining that Arkansas was "linked" to downwind air quality problems in other States, *id.* It then proposed determining that Arkansas should have addressed whether it could achieve cost-effective emissions reductions, which Region 6 said Arkansas was "obligated" to do given the "EPA 2016v2 modeling" projections that didn't exist when Arkansas wrote its SIP. *Id.* at 9,810. Finally, concluding that Arkansas was obligated to make new emissions reductions, Region 6 proposed disapproval on the ground that Arkansas's SIP, given the data available to Arkansas at the time, hadn't sought to make any. *Id.* at 9,811.

Arkansas submitted extensive comments on the regional docket objecting to the proposed disapproval. Those comments chiefly objected to Region 6's reliance on EPA's eleventh-hour modeling. App'x 752-54, 761. As Arkansas pointed out, new modeling will often yield different results, App'x 754, and unless EPA relies on the modeling States had when they drafted their SIPs, States cannot predict what the relevant modeling results will be, App'x 774.

7

### 5. EPA's disapproval of Arkansas's SIP

On February 13, 2023, EPA finalized Region 6's proposed disapproval of Arkansas's SIP. 88 Fed. Reg. at 9,355. The disapproval was published in the Federal Register along with disapprovals of 20 other States' SIPs, which had previously been proposed in 12 separate notices by different regional offices. *Id.* at 9,337 nn. 5-7. Yet previously EPA had published 24 SIP approvals in separate notices. *Id.* at 9,362 nn. 253-76. The only reason EPA gave for taking this form of "consolidated, single final action" on the disapprovals but not the approvals, *id.* at 9,337, was its stated belief that, by doing so, it had made its SIP disapprovals "nationally applicable," *id.* at 9,338 n.8, or, at minimum, "based on a determination of nationwide scope or effect," *id.*

While EPA catalogued its disapprovals in a single document, EPA's action ultimately took the form of 21 separate disapprovals for 21 different sets of state-specific reasons—as required to comply with Section 7410. As EPA explained, "[w]hile the EPA used [a common] framework" to review the SIPs, "the contents of each individual state's submission were evaluated on their own merits," *id.* at 9,354, and "[t]he full basis for the EPA's disapprovals" was set forth in the "notifications of proposed disapproval for each state" written by the regional offices, from which EPA did not recede. *Id.*

8

EPA did, however, provide a "summary" of its bases for disapproving Arkansas's SIP. *Id.* After "construct[ing] a new emissions" model in response to comments on its previous new model, *id.* at 9,339, EPA now found that Arkansas contributed above 1% of the NAAQS, or 0.7 ppb, to a total of six sites at risk of nonattainment, *id.* at 9,355. Of those six, Arkansas contributed at least 1 ppb to just one. *See* Envtl. Prot. Agency, *Air Quality Modeling Technical Support Document: 2015 Ozone NAAQS SIP Disapproval Final Action*, App'x C, C-2-3.[1] EPA "disagree[d] with Arkansas's arguments for application of a higher contribution threshold than 1 percent of the NAAQS," 88 Fed. Reg. at 9,355—namely, the 1 ppb threshold EPA advised States was likely appropriate in 2018. Later in the rule, summarizing its response to comments, EPA disclaimed any nationwide determination on this critical point, writing that "[t]he Agency has not imposed a requirement that states must use a 1 percent of the NAAQS threshold." *Id.* at 9,373. "Rather . . . the Agency has found that . . . Arkansas [and others] have not made a sufficient showing that the use of an alternative contribution threshold is justified for *those States*," after separately "evaluat[ing] every justification put forward by every state" for a higher threshold. *Id.* (emphasis added)

---

[1] https://www.epa.gov/system/files/documents/2023-02/AQ%20Modeling%20TSD_Final%20Action%20%281%29.pdf.

9

Having found Arkansas "linked," *id.* at 9,355, EPA concluded Arkansas "did not conduct an adequate" emissions reduction analysis, and had failed to impose new controls. *Id.* It thus disapproved Arkansas's SIP.

10

## I. EPA's disapproval of Arkansas's SIP was not a nationally applicable action.

EPA first claims its disapproval of Arkansas's SIP was a nationally applicable action under Section 7607(b)(1), reviewable only in the D.C. Circuit, because it was published in a rule alongside 20 other SIP disapprovals. Yet the plain text of Section 7607(b)(1) contradicts EPA's position. That statute says that "*any* denial or disapproval by the Administrator under subchapter I," in which Section 7410 is codified, is a "locally or regionally applicable" action that may be reviewed "only in the United States Court of Appeals for the appropriate circuit," 42 U.S.C. 7607(b)(1) (emphasis added)—which EPA concedes means "regional circuit," Mot. 4. The only exception is for locally or regionally applicable actions based on a determination of nationwide scope or effect. 42 U.S.C. 7607(b)(1).

"Any" Subchapter I disapproval means "any" Subchapter I disapproval—not any disapproval, except for a disapproval published in a document with other disapprovals. "[R]ead naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (internal quotation marks omitted). Indeed, interpreting a different "any" eleven words earlier in the same sentence of Section 7607(b)(1), the Supreme Court held that that "expansive language . . . must be construed to mean exactly what it says, namely, *any other* final action." *Harrison v. PPG*

11

*Indus.*, 446 U.S. 578, 589 (1980). "Any" eleven words later must mean the same thing. And though it's true that the word "any," while a "catchall," does not "define what it catches," *Flora v. United States*, 362 U.S. 145, 149 (1960), EPA cannot deny that its disapproval of Arkansas's SIP was a "disapproval by the Administrator under subchapter I." 42 U.S.C. 7607(b)(1).

Accordingly, no court of appeals has ever doubted—at least since the 1977 addition of the exception to the general rule for local actions based on determinations of nationwide scope—that SIP disapprovals are reviewed in the regional circuit where the disapproved State lies. The circuit EPA would have this Court transfer Arkansas's petition to has held that EPA's action on a SIP "is 'the *prototypical* "locally or regionally applicable" action,'" noting the statute "expressly provides" as much. *Sierra Club v. EPA*, 47 F.4th 738, 743 (D.C. Cir. 2022) (quoting *Am. Road & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013)). This Court has agreed, holding an approval of a SIP was "a 'prototypical "locally or regionally applicable" action' that must be challenged in the regional" circuit. *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 993 (8th Cir. 2016) (quoting *Am. Rd. & Transp. Builders*, 705 F.3d at 455). And regional circuits have reviewed SIP disapprovals that were promulgated in rules that disapproved SIPs across multiple circuits. *See Texas v. EPA*, 829 F.3d 405, 419 (5th Cir. 2016) (holding that a rule disapproving Texas's and Oklahoma's SIPs

12

was a locally or regionally applicable action, severally reviewable in the Fifth and Tenth Circuits).

EPA tries several tacks to escape from Section 7607(b)(1)'s unambiguous assignment of SIP disapprovals to the regional circuits. It first claims that this Court and other circuits have held an omnibus SIP disapproval is nationally applicable. Mot. 10. But none of the cases EPA cites held that. This Court's unpublished order in *Cedar Falls Utils. v. EPA*, No. 16-4504, transferred a petition for review of a rule imposing *federal* implementation plans (FIPs) on 22 States. *See* Resp.'s Mot. to Dismiss or Transfer at 1 (Jan. 19, 2017). And it did not say whether it did so because that rule was nationally applicable, or because it was a locally applicable action that was based on a determination of nationwide scope regarding the content of identical FIPs. *See* Judgment (Feb. 22, 2017). As Section 7607 provides that the approval of "any implementation plan under section 7410" is locally applicable, *Cedar Falls* is better read to stand for the latter proposition.[2]

As for EPA's out-of-circuit cases, *ATK Launch Systems v. EPA*, the decision EPA relies on most heavily, involved a rule that designated "thirty-one areas across the country" as sites in nonattainment of a NAAQS; it did not approve or disapprove any SIP or FIP. 651 F.3d 1194, 1197 (10th Cir. 2011). *Southern*

---

[2] Indeed, EPA itself suggests this Court's transfer likely rested on that ground. *See* Mot. 15.

13

*Illinois Power Cooperative v. EPA* involved an identical action. 863 F.3d 666, 669 (7th Cir. 2017). And the Fourth Circuit's unpublished decision in *West Virginia Chamber of Commerce v. Browner* involved a "SIP Call," which is neither an approval nor disapproval of a SIP, but a nationwide "call" on States to revise their SIPs. No. 98-1013, 1998 WL 827315, at *2 (4th Cir. Dec. 1, 1998). None of EPA's cases, therefore, had to grapple with Section 7607's unambiguous assignment of SIP approvals and disapprovals (less the nationwide-scope exception) to regional circuits.

Next, EPA argues its rule "applie[d] a uniform methodology and legal interpretation to SIP submissions," and that that makes it nationally applicable. Mot. 11. But that is really an argument that the rule satisfies the statute's exception to regional venues for locally applicable actions that are "*based on* a determination of nationwide scope." 42 U.S.C. 7607(b)(1) (emphasis added). It does not make the SIP disapproval a nationally applicable action. Indeed, that exception shows that merely basing an action on a nationwide statutory interpretation does not alone make that action nationally applicable. As EPA's would-be transferee court has explained, "many locally or regionally applicable actions may require interpretation of the Clean Air Act's statutory terms, and that kind of interpretive exercise alone does not transform a locally applicable action into a nationally applicable one." *Sierra Club*, 47 F.4th at 744.

14

Last, EPA appears to claim that the "action" here is not the disapproval of Arkansas's SIP, but the disapproval of 21 SIPs, and that Arkansas's petition merely "purports to challenge the effects of the Final Rule" as applied to Arkansas. Mot. 11. But this is not some sort of as-applied challenge to a single-shot disapproval, but a challenge to the part of EPA's rule—Part IV.B.—that individually disapproved Arkansas's SIP on Arkansas-specific grounds. *See* 88 Fed. Reg. at 9,355; Fed. R. App. P. 15(a)(2)(C) (authorizing petitions from a "part" of a rule). Section 7607 tells us that the "action" classified as locally or nationally applicable is the individual SIP "denial or disapproval" itself, not the rule in which it is documented. And the rule by its terms merely finalizes the regions' state-specific disapprovals, rather than somehow disapproving 21 SIPs *en masse*. 88 Fed. Reg. at 9,355. Further, it purports to do so on the merits of "each individual state's submission," *id.* at 9,354, individually rejecting, for example, Arkansas's "justification" for a higher contribution threshold, *id.* at 9,373. The judicially reviewable action here is EPA's disapproval of Arkansas's SIP, and that disapproval is a locally applicable action.

## II. EPA's disapproval of Arkansas's SIP was not based on a determination of nationwide scope or effect.

EPA next argues that even if its disapproval of Arkansas's SIP was locally or regionally applicable, it was "based on a determination of nationwide scope or

effect" and is therefore exclusively reviewable in the D.C. Circuit. Mot. 13-17. EPA is wrong.

First, a preliminary word about the applicable standard of review. For venue over a locally or regionally applicable action to lie in the D.C. Circuit, Section 7607 requires both that the action be "based on a determination of nationwide scope or effect and [that] in taking such action the [EPA] finds and publishes that such action is based on such a determination." 42 U.S.C. 7607(b)(1).

Courts have held that EPA's decision on "whether to make and publish [that] finding" is committed to EPA's discretion by law and unreviewable. *Sierra Club*, 47 F.3d at 746. In other words, where the national-determination exception applies, it is within EPA's sole discretion whether to invoke it.

But "[a] court may review . . . whether locally or regionally applicable action is based on a determination of nationwide scope or effect when EPA so finds." *Sierra Club*, 47 F.4th at 746; *see also Texas v. EPA*, 893 F.3d 826, 834-35 (5th Cir. 2020) ("Courts decide whether . . . an action is based on a national determination."). And its review of that question is "independent" of EPA's determination, as "the answer to [that question] controls the role of the court." *Texas*, 829 F.3d at 421. EPA cites no case holding otherwise. It claims Congress left the question to its "broad discretion," Mot. 14 n.9, but that conflates EPA's choice to make a *finding* that its action is based on a nationwide determination with

16

whether the action *is* based on one.  Those are "two . . . distinct" questions.  *Sierra Club*, 47 F.4th at 745.  And whether EPA's action is in fact based on a nationwide determination is not a discretionary judgment call, but a question of law that goes to judicial venue—not a subject for agency deference.

On the merits, EPA argues, as it did in the rule, that its disapproval was based on a "common core of nationwide policy judgments," Mot. 14 (quoting 88 Fed. Reg. at 9,380).  It cites its application of its familiar four-step framework for implementing the good-neighbor provision, *id.*, and its rejection of one argument made by Arkansas and six other States for a higher contribution threshold than EPA preferred, *id.* at 15 n.10 (citing 88 Fed. Reg. at 9,372).

Yet mere consistency in legal interpretations or policy judgments, applied at a 30,000-foot level to state-specific facts, cannot be what Congress had in mind when it said that an exceptional subset of locally applicable actions that are based on nationwide determinations are reviewable in the D.C. Circuit.  For consistent legal interpretation and policy is the prerequisite of *any* lawful agency action.  *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (holding "inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change") (internal quotation marks omitted).  EPA could no more apply different standards to different SIPs at the same time than it could approve and disapprove SIPs by drawing lots.  Moreover, all SIP approvals and

17

disapprovals are "based on"—in EPA's loose sense—the underlying nationwide NAAQS. Thus, EPA's reading of the nationwide-determination exception would completely swallow the rule that SIP approvals and disapprovals are reviewed in regional circuits. EPA could always, if it chose, shift review of action on SIPs by making an unreviewable finding of nationwide scope. That cannot be what Congress intended. *See, e.g.*, *Knight v. Comm'r*, 552 U.S. 181, 191 (2008) ("Given that Congress has enacted a general rule . . . , we should not eviscerate that legislative judgment through an expansive reading of a somewhat ambiguous exception."); *cf. Texas*, 829 F.3d at 423 (rejecting EPA's argument that any precedential legal interpretation amounts to a nationwide determination because "[i]t would reverse § 7607(b)(1)'s presumption").

Section 7607's drafting history shows that when enacted, the phrase "based on a determination of nationwide scope" was understood far more narrowly. Rather than referencing any underlying nationwide legal interpretation or policy judgment whatsoever, it referred to rare instances where a nationwide EPA decision automatically triggered the same action on SIPs, and ratified court of appeals cases transferring petitions in such rare cases to the D.C. Circuit.

When Section 7607 was enacted, it had no exception for SIP actions based on determinations of nationwide scope. It instead simply provided that all SIP approvals were reviewable in the "appropriate circuit." Clean Air Act

18

Amendments of 1970, Pub. L. No. 91-604, sec. 12(a), 84 Stat. 1676, 1707. But courts of appeals were not always sure what the appropriate circuit was. Some contended that in SIP cases "where the automatic application of standard, nation-wide guidelines to all [state] plans simultaneously preordains wholesale approvals" of SIPs, *NRDC v. EPA*, 465 F.2d 492, 494 (1st Cir. 1972),[3] or where EPA regulations "ha[d] the effect of amending every state's air quality implementation plan in precisely the same way," *Dayton Power & Light Co. v. EPA*, 520 F.2d 703, 705 (6th Cir. 1975), the appropriate circuit was the D.C. Circuit. However sensible those decisions were, by reading "appropriate" so flexibly, litigants were left "essentially without a venue statute for determining where to challenge action" on SIPs. David P. Currie, *Judicial Review Under Federal Pollution Laws*, 62 Iowa L. Rev. 1221, 1266 (1977).

That lack of clarity prompted the Administrative Conference of the United States to action. In 1976, it recommended that Congress amend Section 7607 to "clarify[] that the appropriate circuit is the one containing the state whose plan is challenged." 41 Fed. Reg. 56,767, 56,767 (Dec. 30, 1976). But EPA partially dissented. Attaching a separate statement to the Conference's report, its general counsel agreed that "approval and promulgation of State implementation plans

---

[3] There, the issue was a nationwide two-year extension of the time to attain the NAAQS. *Id.* at 493.

usually involve issues peculiar to the affected States" that were best reviewed regionally. *Id.* at 56,768 (separate statement of G. William Frick). But "sometimes," he wrote, they "involve[d] generic determinations of nationwide scope or effect." *Id.* at 56,768-69. Endorsing the cases discussed above, EPA's counsel argued that such determinations did "not turn on the particulars of [their] impact within a given Circuit," *id.* at 56,769, or "involve factual questions unique to particular geographical areas," *id.* at 56,769 n.2, and therefore should be reviewed in the D.C. Circuit like nationally applicable actions.

Congress agreed with EPA. In the committee report on the bill that passed, it wrote that while it agreed "in large measure" with the Administrative Conference (which addressed a number of other venue issues), it "also concur[red]" with "item no. 1 of [Frick's] separate statement" (the relevant item). H.R. Rep. No. 95-294, at 324 (1977). Enacting his statement almost word for word, Congress amended Section 7607 to provide that locally applicable actions that were based on "a determination of nationwide scope or effect" were reviewable in the D.C. Circuit. Clean Air Act Amendments of 1977, Pub. L. No. 95-95, sec. 305(c)(1)(4), 91 Stat. 685, 776.

This history makes two things clear. First, in enacting the exception, Congress sought to ratify, by a more predictable means, the court of appeals decisions holding that EPA determinations that "automatic[ally]" and

20

"simultaneously preordain[ed] wholesale [SIP] approvals," *NRDC*, 465 F.2d at 494, or "amend[ed] every [SIP] in precisely the same way," *Dayton Power & Light*, 520 F.2d at 705, were reviewed in the D.C. Circuit.[4]  Second, as "determination of nationwide scope or effect" was used at the time, SIP actions that "involve[d] issues peculiar to the affected States" and those that "involve[d] generic determinations of nationwide scope or effect" were deemed mutually exclusive categories.  41 Fed. Reg. at 56,768-69.  The SIP actions EPA and Congress sought to keep in the D.C. Circuit did not merely involve the application of broad nationwide standards to "factual questions unique to particular geographical areas," *id.* at 56,769 n.2, but were those rare SIP actions where state-specific facts were irrelevant.

That high bar is not met here.  EPA indeed applied its broad four-step framework and a number of other legal interpretations and policy choices to all States.  But those common standards did not automatically preordain wholesale approval or denial.  Instead, when filtered through EPA's state-specific projections of each State's ozone contributions, EPA's standards split the nation down the middle.  24 States' SIPs were approved, 88 Fed. Reg. at 9,362, 19 were disapproved in full, *id.* at 9,336, two were disapproved in part, *id.*, and action was

---

[4] In so doing, they also released the pressure on regional circuits to flexibly read "appropriate" in exceptional cases and implicitly clarified that "appropriate circuit" meant regional circuit.

Appellate Case: 23-1320     Page: 27     Date Filed: 04/06/2023 Entry ID: 5262819

deferred on two more, *id.* at 9,337.  No set of SIP actions could less resemble those described by EPA in 1976, or in the court of appeals cases EPA and Congress sought to entrench.  EPA's disapproval was not "based on a determination of nationwide scope or effect."

CONCLUSION

This Court should deny EPA's motion to dismiss or transfer.

Dated: April 6, 2023                    Respectfully Submitted,


TIM GRIFFIN
  Arkansas Attorney General

NICHOLAS J. BRONNI
  Arkansas Solicitor General
DYLAN L. JACOBS
  Deputy Solicitor General
ASHER STEINBERG
  Senior Assistant Solicitor General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone:    (501) 682-2007
Dylan.Jacobs@ArkansasAG.gov

*Attorneys for the State of Arkansas and Arkansas Department of Energy and Environment*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 5,068 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman font, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

/s/ *Asher Steinberg*
Asher Steinberg

Appellate Case: 23-1320    Page: 29    Date Filed: 04/06/2023 Entry ID: 5262819

**CERTIFICATE OF SERVICE**

I certify that on April 6, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

/s/ *Asher Steinberg*
Asher Steinberg