No. 23-1320

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

———————————

STATE OF ARKANSAS, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————————

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**RESPONDENTS' RESPONSE IN OPPOSITION TO ARKANSAS'S
MOTION FOR STAY OF THE FINAL RULE**

———————————

TODD KIM
*Assistant Attorney General*

*Of Counsel:*
ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
  *Office of the General Counsel*
  *U.S. Environmental Protection*
    *Agency*
  *Washington, DC*

JIN HYUNG LEE
ALEXANDRA L. ST. ROMAIN
  *U.S. Department of Justice*
  *Environment and Natural Resources*
    *Division*
  *P.O. Box 7611*
  *Washington D.C. 20044-7611*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 2

    I.      Statutory Background ............................................................ 2

    II.    Implementation of the Good Neighbor Provision ................................. 4

    III.   Procedural History .............................................................. 5

          A.    EPA's Evaluation of Arkansas's and Other States' Good Neighbor SIPs for the 2015 Ozone NAAQS ............................ 5

          B.    EPA's Federal Good Neighbor Plan for the 2015 Ozone NAAQS ......................................................................... 9

          C.    Litigation Over the Final Rule ................................................ 10

ARGUMENT .......................................................................................... 12

    I.      The Motion Should be Denied on Venue Grounds or Transferred to the D.C. Circuit ............................................. 12

    II.    Arkansas is Not Entitled to a Stay ......................................... 13

          A.    Arkansas is Unlikely to Succeed on the Merits. ....................... 13

               1.    Arkansas's Own Submission Established Its Emissions Contributed to Downwind Receptors ........... 14

               2.    EPA May Consider Updated Air Quality Data in Evaluating Good Neighbor SIP Submissions. ................ 16

               3.    EPA Reasonably Explained that Arkansas's Use of a 1 ppb Contribution Threshold was Inadequate. ........... 18

Appellate Case: 23-1320    Page: 2    Date Filed: 04/28/2023 Entry ID: 5270698

B.     Arkansas Has Shown No Irreparable Harm Absent a Stay.................................................................................20

C.     The Balance of Equities and Public Interest Disfavor a Stay.................................................................................22

CONCLUSION....................................................................................24

CERTIFICATES OF COMPLIANCE....................................................25

CERTIFICATE OF SERVICE .............................................................26

Appellate Case: 23-1320     Page: 3     Date Filed: 04/28/2023 Entry ID: 5270698

# TABLE OF AUTHORITIES

## Cases

*Azar v. Allina Health Servs.*,
  139 S. Ct. 1804 (2019) ........................................................................19

*Baptist Health v. Thompson*,
  458 F.3d 768, 778 (8th Cir. 2006) .......................................................19

*Cty. of Charles Mix v. U.S. Dep't of Interior*,
  674 F.3d 898, 903 (8th Cir. 2012) .......................................................13

*EPA v. EME Homer City Generation, L.P.*,
  572 U.S. 489 (2014) ............................................................... 1, 3, 4, 22

*Etchu-Njang v. Gonzalez*,
  403 F.3d 577 (8th Cir. 2005) ...............................................................16

*Gen. Motors Corp. v. United States*,
  496 U.S. 530 (1990) ..............................................................................3

*Iowa ex rel. Miller v. Block*,
  771 F.2d 347, 354-55 (8th Cir. 1985)...................................................20

*Iowa Utils. Bd. v. FCC*,
  109 F.3d 418, 425 (8th Cir. 1996) ................................................. 19, 20

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ....................................................................... 11, 12

*Midwest Ozone Grp. v. EPA*,
  61 F.4th 187 (D.C. Cir. 2023) ...............................................................4

*Miss. Limestone Producers Ass'n, Inc. v. Browner*,
  165 F.3d 619 (8th Cir. 1999) ...............................................................13

*Nken v. Holder*,
  556 U.S. 418 (2009) .............................................................................12

*North Dakota v. EPA*,
  730 F.3d 750 (8th Cir. 2013)................................................................21

iii

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*,
    760 F.2d 312 (D.C. Cir. 1985)..................................................................13

*Sampson v. Murray*,
    415 U.S. 61 (1974) ..........................................................................21

*Sierra Club v. EPA*,
    356 F.3d 296 (D.C. Cir. 2004)..................................................................16

*Sierra Club v. EPA*,
    939 F.3d 649 (5th Cir. 2019) ..................................................................14

*Winter v. NRDC*,
    555 U.S. 7 (2008) ..........................................................................22

*Wisconsin v. EPA*,
    938 F.3d 303 (D.C. Cir. 2019)........................................................... 4, 17

## Statutes

42 U.S.C. § 7401(b)(1)..........................................................................2

42 U.S.C. § 7408 ..........................................................................1, 3

42 U.S.C. § 7409 ..........................................................................1, 3

42 U.S.C. § 7410 ..........................................................................17

42 U.S.C. § 7410(a) ..........................................................................3

42 U.S.C. § 7410(a)(1)..........................................................................1, 5

42 U.S.C. § 7410(a)(2)(D)(i) ..........................................................................5

42 U.S.C. § 7410(a)(2)(D)(i)(I)..........................................................................1, 3

42 U.S.C. § 7410(c)(1)..........................................................................3, 9

42 U.S.C. § 7410(k)(3)..........................................................................1, 3

42 U.S.C. § 7604(a)(2)..........................................................................23

iv

**Regulations**

76 Fed. Reg. 48208 (Aug. 8, 2011)...........................................................4

80 Fed. Reg. 65292 (Oct. 26, 2015)...........................................................5

81 Fed. Reg. 53284 (Aug. 12, 2016) .........................................................15

81 Fed. Reg. 74504 (Oct. 26, 2016)..................................................... 4, 16

86 Fed. Reg. 23054 (Apr. 30, 2021) ..........................................................4

87 Fed. Reg. 9798 (Feb. 22, 2022) ................................... 6, 7, 8, 9, 15, 18

88 Fed. Reg. 9336 (Feb. 13, 2023) .................................................. passim

Appellate Case: 23-1320    Page: 6    Date Filed: 04/28/2023 Entry ID: 5270698

# INTRODUCTION

Pursuant to the Clean Air Act's ("CAA" or "Act") "Good Neighbor Provision," 42 U.S.C. § 7410(a)(2)(D)(i)(I), states must ensure that their emissions of ozone precursors, which travel great distances, do not significantly contribute to other states' air-quality problems, *see EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 495-96 (2014). States were required to submit for EPA's review Good Neighbor plans after EPA revised the national air quality standards for ozone. *See* 42 U.S.C. §§ 7408-7409; 7410(a)(1), (k)(3). Twenty-one states, including the State of Arkansas (with Arkansas Department of Energy and Environment, Division of Environmental Quality, "Arkansas"), covered in the action under review (the "Final Rule") submitted plans claiming they need not reduce their emissions, and EPA reasonably determined that those plans failed to comply with the Good Neighbor Provision. Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336, 9338 (Feb. 13, 2023) (Ex. 1).

Governmental and non-governmental entities from twelve states petitioned for review of the Final Rule in eight circuit courts. Several, including Arkansas, moved to stay the Final Rule.

Arkansas's motion should be denied. At the outset, EPA maintains that venue is improper in this Court; although EPA acknowledges the Court's order on

April 25, 2023, ECF No. 5269098, EPA intends to seek reconsideration of that order.

Regardless, Arkansas is not entitled to a stay.

First, Arkansas's challenge to the Final Rule is unlikely to succeed. Arkansas's chosen methodology showed that Arkansas's emissions impact other states above Arkansas's chosen contribution threshold, a conclusion merely reinforced by EPA's updated modeling. Arkansas's merits arguments are thus irrelevant.

Second, Arkansas has not established irreparable harm from the Final Rule—which does not require Arkansas to do *anything*—or from the federal plan that the Rule compels EPA to promulgate, which is a separate action that is not under review here.

Third, the balance of the harms and the public interest disfavor a stay. Depriving EPA of authority to address Arkansas's sources' harmful emissions while this litigation proceeds would harm the health and welfare of millions of people who live in areas impacted by pollution from Arkansas.

## BACKGROUND

### I. Statutory Background

The Act seeks "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C. § 7401(b)(1).

2

To that end, the Act controls air pollution through a system of shared federal and state responsibility. *See Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). The Act tasks EPA to establish, and periodically review and revise, National Ambient Air Quality Standards ("NAAQS"), which limit the concentration of certain pollutants in the ambient air. 42 U.S.C. §§ 7408-7409. Once EPA sets new or revised NAAQS, states must propose for EPA's review state implementation plans ("SIPs") to implement and enforce the NAAQS. *Id.* § 7410(a).

Many states have problems attaining and maintaining NAAQS due, in part, to pollution transported from other states. *EME Homer*, 572 U.S. at 496. This is particularly true for ozone, which is formed by pollutants that travel great distances. *Id.* at 496-97. The Good Neighbor Provision addresses interstate pollution transport by requiring each SIP to prohibit emissions that "contribute significantly to nonattainment . . . or interfere with maintenance" of the NAAQS in downwind states. 42 U.S.C. § 7410(a)(2)(D)(i)(I).

EPA reviews states' submissions and must disapprove a SIP that does not comply with the Good Neighbor Provision. *Id.* § 7410(k)(3). EPA's disapproval of a SIP triggers EPA's duty to promulgate a federal implementation plan ("FIP") for the state. *Id.* § 7410(c)(1). States or sources within that state are not required to take any action because of EPA's disapproval. *Id.*

3

## II.    Implementation of the Good Neighbor Provision

EPA has interpreted the Good Neighbor Provision over decades in several rulemakings.[1]  Courts, including the Supreme Court, have consistently upheld the 4-step framework EPA developed for evaluating and defining Good Neighbor obligations as consistent with the Act and "permissible, workable, and equitable." *EME Homer*, 572 U.S. at 524; *see also, e.g.*, *Midwest Ozone Grp. v. EPA*, 61 F.4th 187 (D.C. Cir. 2023); *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019).

Under this framework, Good Neighbor obligations are determined by:

(1) identifying downwind nonattainment and maintenance "receptors" (i.e., sites that will not attain or will struggle to maintain the NAAQS);

(2) identifying upwind states whose pollution is linked to those downwind receptors above a contribution threshold, which has consistently been 1% of the NAAQS;

(3) evaluating whether the linked states "significantly" contribute to downwind states' nonattainment or interfere with their maintenance of the NAAQS by evaluating potential cost-effective emissions reduction opportunities to determine what amount of contribution is "significant"; and

(4) implementing necessary emissions reductions through enforceable control strategies.

*See Wisconsin*, 938 F.3d at 310-11.

---

[1] *See, e.g.*, 76 Fed. Reg. 48208 (Aug. 8, 2011); 81 Fed. Reg. 74504 (Oct. 26, 2016); 86 Fed. Reg. 23054 (Apr. 30, 2021).

4

## III. Procedural History

### A. EPA's Evaluation of Arkansas's and Other States' Good Neighbor SIPs for the 2015 Ozone NAAQS

In 2015, EPA revised the ozone NAAQS to protect public health and welfare. National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65292 (Oct. 26, 2015) ("2015 ozone NAAQS"). Each state then had to submit a plan to meet its Good Neighbor obligations as expeditiously as practicable. *See* 42 U.S.C. § 7410(a)(1), (a)(2)(D)(i); *Wisconsin*, 938 F.3d at 313-20.

In 2018, EPA issued memoranda to provide modeling results and other information that could aid states in the development of their Good Neighbor SIP submissions for the 2015 ozone NAAQS. *See* U.S. EPA, INFORMATION ON THE INTERSTATE TRANSPORT STATE IMPLEMENTATION PLAN SUBMISSIONS FOR THE 2015 OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS UNDER CLEAN AIR ACT SECTION 110(A)(2)(D)(I)(I) (Mar. 27, 2018) ("March 2018 Memo") (Ex. 5); U.S. EPA, ANALYSIS OF CONTRIBUTION THRESHOLDS FOR USE IN CLEAN AIR ACT SECTION 110(A)(2)(D)(I)(I) INTERSTATE TRANSPORT STATE IMPLEMENTATION PLAN SUBMISSIONS FOR THE 2015 OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS (Aug. 31, 2018) ("August 2018 Memo") (Ex. 6).

The March 2018 Memo provided modeling projections of ozone levels and contributions in 2023 based on 2011 data ("2011-based modeling") that could aid states in the development of their Good Neighbor submissions for the 2015 ozone

NAAQS. March 2018 Memo at 3-5. The information included in that memorandum "[wa]s not a final determination regarding states' obligations under the good neighbor provision" and "[a]ny such determination would be made through notice-and-comment rulemaking." *Id.* at 2.

The August 2018 Memo suggested that "it may be reasonable and appropriate for states to use a 1 ppb contribution threshold, as an alternative to a 1 percent threshold, at Step 2 of the 4-step framework in developing their SIP[s]." August 2018 Memo at 4. The Memo stated, "EPA and air agencies should consider whether the recommendations in this guidance are appropriate for each situation," and "[f]ollowing these recommendations does not ensure the EPA will approve a SIP revision in all instances where the recommendations are followed." *Id.* at 1.

Arkansas submitted its SIP for the 2015 Ozone NAAQS to EPA on October 10, 2019. *See* Air Plan Disapproval; Arkansas, Louisiana, Oklahoma, and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9798, 9811 (Feb. 22, 2022) ("Proposed Rule") (Ex. 2); ARK. DEP'T OF ENERGY & ENV'T DIV. OF ENV'T QUALITY, ARK. STATE IMPLEMENT PLAN REVISION 2015 OZONE NATIONAL AMBIENT AIR QUALITY STANDARD (Oct. 10, 2019) ("ADEQ Submission") (Ex. 3), 6-7.

First, Arkansas used EPA's 2011-based modeling to identify nonattainment and maintenance receptors. *Id.* at 10; *see* Proposed Rule, 87 Fed. Reg. at 9803-04. Then, Arkansas, citing the August 2018 Memo and EPA guidance on significant impact levels ("SILs Guidance") for an unrelated CAA permitting program, applied a 1 ppb contribution threshold. ADEQ Submission at 11. Arkansas identified one projected maintenance receptor in Michigan to which it contributed greater than 1 ppb. *Id.* at 10-13. Lastly, despite the identified linkage, Arkansas argued that its emissions were not sufficiently "persistent and consistent" (i.e., that Arkansas impacts air quality on multiple high ozone days in its identified linkage) to be considered "significant." *Id.* at 87, 93-95. Arkansas therefore concluded that it did not have to reduce its emissions. *Id.* at 95; Proposed Rule, 87 Fed. Reg. at 9805-06; Final Rule, 88 Fed. Reg. at 9355.

EPA's assessment of Arkansas's SIP, along with others, was delayed while EPA addressed the D.C. Circuit's remand of another Good Neighbor rule for an earlier ozone NAAQS. *See* Final Rule, 88 Fed. Reg. at 9365.

During this time, EPA updated its 2023 modeling projections to a 2016-based modeling platform, with input from states and other stakeholders. *Id.* at 9339. This modeling followed the same approach to projecting 2023 air quality and contribution levels as the 2011-based modeling but incorporated updated emissions and meteorological data to improve the accuracy of the projections. *See*

7

*id.* at 9339, 9341-42; March 2018 Memo at 4-5. EPA used this 2016-based modeling (relying on the most recent data available as of the proposed and then final rules) and its nationally consistent, judicially upheld, 4-step framework to evaluate Good Neighbor submissions in the Final Rule to ensure an efficient and equitable approach. Final Rule, 88 Fed. Reg. at 9339-43, 9390. EPA also evaluated any alternative modeling, methodology, and analysis submitted by states, but assessed them with an eye towards ensuring national consistency to address a widespread interstate pollution problem. *Id.* at 9354, 9381.

In evaluating Arkansas's submission, EPA determined that Arkansas's chosen 2011-based modeling and contribution threshold showed that the state would be linked to a downwind receptor. Proposed Rule, 87 Fed. Reg. at 9808; Final Rule, 88 Fed. Reg. at 9355. This conclusion was further supported by EPA's 2016-based modeling, which, although showing different linkages, illustrated that Arkansas's emissions were substantial enough to generate linkages to at least one downwind receptor. Proposed Rule, 87 Fed. Reg. at 9808; Final Rule, 88 Fed. Reg. at 9353.

Advancing to Step 3, EPA disagreed with Arkansas that there must be a "persistent and consistent" pattern to demonstrate "significant" contribution, but observed that, even if required, Arkansas's chosen methodology already showed that such a pattern existed. Proposed Rule, 87 Fed Reg. at 9808; U.S. EPA, 2015

8

OZONE NAAQS INTERSTATE TRANSPORT SIP DISAPPROVALS – RESPONSE TO COMMENTS (RTC) DOCUMENT (Jan. 31, 2023) ("RTC") (Ex. 4), 350-54. EPA further found technical and legal shortcomings in Arkansas's additional analyses and determined they did not support Arkansas's conclusion that it has no Good Neighbor obligations for the 2015 ozone NAAQS. Proposed Rule, 87 Fed. Reg. at 9809-10; Final Rule, 88 Fed. Reg. at 9355. Consequently, EPA disapproved Arkansas's submission. Final Rule, 88 Fed. Reg. at 9355.

While not dispositive to EPA's disapproval because Arkansas identified itself as linked above 1 ppb, EPA also addressed and determined that Arkansas's use of that contribution threshold was inadequately justified. *See id.* at 9373; RTC 297-98. Arkansas did not evaluate state-specific circumstances as anticipated by the August 2018 Memo at 1. *See* RTC at 297-98. Arkansas's reliance on the SILs Guidance was also flawed, because it "relates to a different [CAA] provision" and is otherwise distinguishable. Proposed Rule, 87 Fed. Reg. at 9806; *see also* Final Rule, 88 Fed. Reg. at 9372.

## B. EPA's Federal Good Neighbor Plan for the 2015 Ozone NAAQS

EPA's disapproval triggered its statutory duty to promulgate a FIP to address the Good Neighbor Provision in those states whose submissions were disapproved. 42 U.S.C. §7410(c)(1). On March 15, 2023, the EPA Administrator signed the Federal Good Neighbor Plan for the 2015 Ozone National Ambient Air Quality

9

Standards ("Final FIP") to resolve states' Good Neighbor obligations for the 2015 ozone NAAQS. Declaration of Rona Birnbaum ("Birnbaum Decl.") (Ex. 7) ¶ 6. The Final FIP relies on EPA's 4-step framework to eliminate significant contribution to downwind states. *Id.* ¶¶ 8, 15. The Final FIP's effective date is tied to the rule's publication in the *Federal Register*, which has not yet occurred. *Id.* ¶¶ 21-22.

## C. Litigation Over the Final Rule

Numerous entities have petitioned for review in this Court as well as in the Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, and District of Columbia (D.C.) Circuits.[2] EPA has filed motions to transfer petitions to the D.C. Circuit or dismiss based on improper venue ("Venue Motions") throughout those circuits other than

---

[2] *See, e.g.*, *West Virginia v. EPA*, No. 23-1418 (4th Cir.); *Texas v. EPA*, No. 23-60069 (5th Cir.); *Kentucky v. EPA*, No. 23-3216 (6th Cir.); Pet. for Review, *Nev. Cement Co. v. EPA*, No. 23-682 (9th Cir.); Pet. for Review, *Utah v. EPA*, No. 9509 (10th Cir.); *Alabama v. EPA*, No. 23-11173 (11th Cir.); *Nevada v. EPA*, No. 23-1113 (D.C. Cir.).

Appellate Case: 23-1320     Page: 16     Date Filed: 04/28/2023 Entry ID: 5270698

the D.C. Circuit, which remain pending.[3]  And similar stay motions have been filed and remain pending in the Fifth and Tenth Circuits.[4]

In this Court, entities in Arkansas,[5] Missouri,[6] and Minnesota[7] petitioned for review of the Final Rule.  Arkansas moved to stay the Final Rule as it relates to Arkansas, ECF No. 5260845, as did two Missouri petitioners ("Missouri Movants") as it relates to Missouri.[8]  Additionally, where petitioners moved to stay the Final Rule, EPA filed Venue Motions.  The Venue Motions in the Missouri Movants' cases have not yet been fully briefed and remain pending.[9]  The Venue Motion in this docket was fully briefed and this Court, without explaining its

---

[3] The Tenth Circuit has issued an order regarding the Venue Motions before it; it "refer[red] the question . . . to the [merits] panel."  *Utah v. EPA*, No. 23-9509 (10th Cir. Apr. 27, 2023), ECF No. 010110851072.  As such, the question of whether petitions for review of the Final Rule may be challenged only in the D.C. Circuit remains pending before the Tenth Circuit.

[4] *See, e.g.*, Tex. Stay Mot., *Texas v. EPA*, No. 23-60069 (5th Cir. Mar. 3, 2023); Utah Stay Mot., *Utah v. EPA*, No. 23-9509 (10th Cir. Mar. 7, 2023), ECF No. 10981771.

[5] *Arkansas v. EPA*, No. 23-1320 (8th Cir.); *Ark. League of Good Neighbors v. EPA*, No. 23-1778 (8th Cir.); *Hybar, LLC v. EPA*, No. 23-1777 (8th Cir.); *Sw. Elec. Power Co. v. EPA*, No. 23-1765 (8th Cir.).

[6] *Missouri v. EPA*, No. 23-1719 (8th Cir.); *Union Elec. Co. v. EPA*, No. 23-1751 (8th Cir.); *City Utils. of Springfield v. EPA*, No. 23-1774 (8th Cir.).

[7] *Allete, Inc. v. EPA*, No. 23-1776 (8th Cir.).

[8] *Missouri*, No. 23-1719, ECF No. 5265153 (8th Cir. Apr. 13, 2023); *Union Elec.*, No. 23-1751, ECF No. 5265621 (8th Cir. Apr. 14, 2023).

[9] *Missouri*, No. 23-1719, ECF No. 5265717 (8th Cir. Apr. 17, 2023); *Union Elec.*, No. 23-1751, ECF No. 5265720 (8th Cir. Apr. 17, 2023).

decision, denied the motion on April 25, 2023 ("April 25 order").  ECF No. 5269098.

## ARGUMENT

Arkansas's motion should be denied.  First, EPA maintains that venue is improper.  Second, Arkansas fails to make a "clear showing" that the "extraordinary and drastic remedy" of a stay is warranted here.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  All four factors that courts consider when determining whether a stay is warranted—(1) strong likelihood of success on the merits, (2) irreparable injury to movant absent a stay, (3) substantial injury to other parties interested in the proceeding, and (4) the public interest—weigh against a stay.  *See Nken v. Holder*, 556 U.S. 418, 433 (2009).

## I.    The Motion Should be Denied on Venue Grounds or Transferred to the D.C. Circuit.

At the outset, EPA acknowledges the April 25 order denying EPA's Venue Motion in this docket.  EPA intends to seek reconsideration of that order and continues to firmly believe that petitioners may only challenge the Final Rule in the D.C. Circuit.  As detailed in EPA's Venue Motion and reply in support of it, pursuant to Congress's enactment of an action-focused venue provision to ensure uniformity in court decisions, EPA disapproved each state's submission on similar grounds to ensure consistency nationwide.  Based on this commonality, along with the interdependent nature of interstate transport pollution and using a common core

12

of knowledge and analysis to evaluate the submissions, EPA disapproved 21 submissions in a single action. *See* Final Rule, 88 Fed. Reg. at 9380-81. In EPA's view, the Final Rule is therefore nationally applicable or, alternatively, it is based on a determination of nationwide scope or effect and EPA so found when it published the Final Rule. Therefore, in EPA's view, any challenge to the Final Rule must be heard in the D.C. Circuit. Likewise, EPA also continues to believe that the D.C. Circuit should decide whether a stay is appropriate. See *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312, 315 (D.C. Circ. 1985) (explaining that venue is "inextricably bound up with the remedial decision of whether a stay should issue"). That said, in respect of the April 25 order, EPA will not further argue the substance of those venue issues here. However, EPA respectfully reserves these venue arguments, and should the Court grant reconsideration of the April 25 order, EPA respectfully requests that the Court transfer of this case to the D.C. Circuit for resolution of the instant stay motion.

## II.  Arkansas is Not Entitled to a Stay.

### A.  Arkansas is Unlikely to Succeed on the Merits.

To make a clear showing of a strong likelihood of success on the merits, Arkansas must demonstrate that the Final Rule is likely "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Miss. Limestone Producers Ass'n, Inc. v. Browner*, 165 F.3d 619, 621 (8th Cir. 1999) (quotation

13

omitted). Agency decisions are given a "high degree of judicial deference," *id.* (quotation omitted), and are upheld so long as the agency "articulate[s] a rational connection between the facts found and the choice made," *Cty. of Charles Mix v. U.S. Dep't of Interior*, 674 F.3d 898, 903 (8th Cir. 2012) (quotations omitted).

Arkansas is unlikely to succeed on the merits because Arkansas does not refute EPA's reasoned decision for disapproving its submission. Instead, Arkansas focuses on non-dispositive issues—EPA's updated modeling and contribution threshold—which are irrelevant to the outcome. Regardless of those issues (which, even if considered, were lawful), Arkansas's own chosen modeling and contribution threshold showed that Arkansas was linked to a downwind receptor. EPA reasonably determined that Arkansas's attempts to discount its emissions' significance were unsupportable and inconsistent with the Good Neighbor Provision. Consequently, Arkansas's merits arguments fall short. *See Sierra Club v. EPA*, 939 F.3d 649, 687 (5th Cir. 2019) (upholding SIP action based on state's chosen modeling without reaching merits of additional modeling considered by EPA).

### 1. Arkansas's Own Submission Established Its Emissions Contributed to Downwind Receptors.

As Arkansas admits, its own chosen modeling and contribution threshold showed that it was linked to a maintenance receptor in Michigan, and EPA's disapproval can be upheld without considering Arkansas's merits arguments. Mot.

14

at 4; ADEQ Submission at 12. Even accepting Arkansas's merits arguments, the state's submission indicated that Arkansas needed to proceed to Step 3. As such, under EPA's framework at that step, Arkansas would be expected to consider emissions reductions. Final Rule, 88 Fed. Reg. at 9343. But Arkansas did not. Instead, Arkansas sought to discount its emissions' impact through an assessment of whether there was a "persistent and consistent pattern" of contribution. ADEQ Submission at 87. EPA gave due consideration to Arkansas's alternative approach but concluded that Arkansas's chosen modeling already demonstrated such a pattern—it confirmed that Arkansas's emissions impact Michigan's air quality on multiple high ozone days. RTC at 350-51. Further, Arkansas's reliance on additional technical analyses and legal arguments to discount its emissions' significance were analytically and legally flawed. Proposed Rule, 87 Fed. Reg. at 9809-10; *see also* RTC 360-61.

Arkansas has presented no argument to this analysis, which provides a wholly sufficient basis for EPA's disapproval, irrespective of the issues Arkansas raises in its merits arguments. *See* Final Rule, 88 Fed. Reg. at 9355. Consequently, Arkansas cannot succeed on the merits, and its stay motion should be denied on this basis alone.

15

## 2. EPA May Consider Updated Air Quality Data in Evaluating Good Neighbor SIP Submissions.

Nonetheless, even if this Court evaluates the merits of Arkansas's argument against EPA's ability to consider updated air quality data, it falls short.

Arkansas argues that EPA unlawfully changed its policy regarding modeling. Mot. 14-15. However, EPA has consistently used updated air quality information when evaluating Good Neighbor SIP submissions. *See, e.g.*, 81 Fed. Reg. 53284, 53284-26 (Aug. 12, 2016) (rejecting comments that EPA may not rely on updated air quality information in disapproving Texas' Good Neighbor SIP for the 2008 ozone NAAQS); 81 Fed. Reg. 74504, 74507 (Oct. 26, 2016) (modeling updated between proposed and final Good Neighbor rule). Further, when EPA released the 2011-based modeling results, EPA expressly notified states that while these could "inform the development of the[ir] SIPs, the information [wa]s not a final determination regarding states' obligations under the good neighbor provision." March 2018 Memo at 2. Thus, EPA made no policy change.

Arkansas relies on *Sierra Club v. EPA*, 356 F.3d 296 (D.C. Cir. 2004) and EPA actions taken under a different CAA provision for the proposition that EPA must evaluate Good Neighbor SIP submissions based only on information available at the time of SIP development. Mot. at 11-14. While EPA responded to comments regarding *Sierra Club* (the substance of which Arkansas does not contest in its stay motion), RTC at 61, no party cited the SIP actions Arkansas now

16

identifies to assert that EPA has unlawfully changed policy. Had Arkansas done so, EPA would have had the opportunity to explain on the record how considerations under those EPA actions differ from Good Neighbor obligations. Because it did not, Arkansas has waived that particular argument. *Etchu-Njang v. Gonzalez*, 403 F.3d 577, 583 (8th Cir. 2005) (reiterating the "basic principle of administrative law" that appellate courts generally "do[] not give consideration to issues . . . not presented to an administrative decisionmaker" (internal quotation marks and citations omitted)).

Regardless, because the cited EPA actions concern a different CAA provision, they do not evince a change in policy from EPA's position as to why it may rely on updated modeling under the Good Neighbor Provision (on which Arkansas does not engage). *See* Final Rule, 88 Fed. Reg. at 9365-67. EPA explained, among other things, that the Good Neighbor framework focuses on air quality conditions and contribution levels in a future year associated with downwind areas' attainment dates, and it would be "anomalous" to use air quality data arrested as of a procedural deadline under 42 U.S.C. § 7410. *Id.* at 9366 (citing *Wisconsin*, 938 F.3d at 321-22). Further, EPA recounted the numerous opportunities states had to engage with EPA as its air quality analysis was updated, *id.* at 9366-67, and explained how the purposes of the Good Neighbor Provision

17

would be frustrated if EPA could not refine its understanding through the rulemaking process, RTC 60-62.

Therefore, even if this Court considers Arkansas's argument that EPA cannot rely on updated modeling (which, *supra* Argument II.A.1, it need not), that argument lacks merit.

### 3. EPA Reasonably Explained that Arkansas's Use of a 1 ppb Contribution Threshold was Inadequate.

This Court need not consider Arkansas's contribution threshold argument, as Arkansas contributed to at least one receptor above its chosen 1 ppb contribution threshold. Thus, this issue is not dispositive. Regardless, this argument also falls short.

Arkansas argues that states could rely on the August 2018 Memo without further evaluation of state-specific circumstances and that it was EPA's burden to explain its departure from that Memo. Mot. at 17-19. But the August 2018 Memo makes abundantly clear that states must adequately justify the use of a 1 ppb contribution threshold:

- "EPA and air agencies should consider whether the recommendations in this guidance are appropriate for each situation," August 2018 Memo at 1;

- "Following these recommendations does not ensure that the EPA will approve a SIP revision in all instances where the recommendations are followed, as the guidance may not apply to the facts and circumstances underlying a particular SIP," *id.*;

18

- "Final decisions by the EPA to approve a particular SIP revision will only be made based on the requirements of the statute and will only be made following an air agency's final submission of the SIP revision to the EPA, and after appropriate notice and opportunity for public review and comment," *id.*;

- "[I]t *may be* reasonable and appropriate for states to use a 1 ppb contribution threshold," *id.* at 4 (emphasis added).

Consistent with the August 2018 Memo, EPA considered whether Arkansas's submission adequately supported an application of a 1 ppb contribution threshold for the state and reasonably determined that it did not. *See* Proposed Rule, 87 Fed. Reg. at 9806-07; Final Rule, 88 Fed. Reg. at 9372-73; RTC 297-98; *see also* RTC at 295-97 (evaluating such factors regarding Alabama's SIP submission). Given the August 2018 Memo's clear language and EPA's consistent application of that Memo since its issuance, there was no policy change. *Cf.* Mot. at 18. Consequently, Arkansas lacks a "legitimate reliance" interest in the August 2018 Memo, as EPA made no policy change. *Id.* at 17-18; *Baptist Health v. Thompson*, 458 F.3d 768, 778 (8th Cir. 2006), *abrogated on other grounds by Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019) (holding that legitimate reliance is one where individuals take action "in good-faith reliance on agency pronouncements" (quotation and internal brackets omitted)).

Thus, even if this Court considers Arkansas's argument that EPA unlawfully recanted its guidance on the 1 ppb contribution threshold (which, *supra* Argument II.A.1, it need not), that argument lacks merit.

19

**B.** **Arkansas Has Shown No Irreparable Harm Absent a Stay.**

To establish irreparable harm, Arkansas must demonstrate an injury that "is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996). Arkansas identifies no such harm.

The Final Rule does not require Arkansas to do *anything* and thus itself effects no irreparable harm. *See* Final Rule, 88 Fed. Reg. at 9364 ("[T]his action to disapprove SIP submissions itself will not impose any requirements or penalties on any state or sources within that state."). Arkansas alleges irreparable harm based on vague alleged compliance costs borne by unidentified "key Arkansas industries" associated with the not-yet-published Final FIP. Mot. at 19-20. Arkansas lacks standing to raise such injuries. In claims against the United States premised on federal law, a state must base its standing on alleged injuries to the state itself, not as *parens patriae* for the interests of its citizens or businesses. *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 354-55 (8th Cir. 1985). The Final FIP regulates industrial sources of air pollution, not states, and Arkansas fails to connect alleged effects on regulated entities and its own interests.

Moreover, Arkansas's allegations are too vague to meet its heavy burden to obtain a stay. Arkansas provides no evidence in support of its irreparable harm argument. *See* Mot. at 19-20. Indeed, Arkansas's irreparable harm argument is

undercut by its own admission that "the lion's share of the FIP's projected emissions reductions do not kick in until 2026," *id.* at 20, and record-based findings that the Final FIP's emissions-control strategies are readily achievable and already at least partially in operation. Birnbaum Decl. ¶¶ 43-44 ("[N]o new pollution control equipment is assumed in 2023, only the operation of existing equipment.").

Regardless, any harm Arkansas may experience as a result of the Final FIP are not irreparable because it is not "certain and great." *Iowa Utils.*, 109 F.3d at 425. Once the Final FIP is published (and before it takes effect 60 days later), Arkansas may petition to review that final action and relatedly move for a stay if it believes the FIP to be independently unlawful and causing it irreparable harm. Arkansas has not asserted that the Final FIP is incontestable in its own right, such that it could not challenge—and move to stay—the FIP in separate litigation. At least unless and until Arkansas so asserts, it has not carried its burden to show that harm traceable to the Final FIP is *ir*reparable absent a stay in *this* case. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate . . . relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable injury.").

Arkansas contends that the Final Rule and Final FIP will disrupt the Act's cooperative federalism framework. Mot. at 19. While states enjoy discretion to

21

determine the "particular restrictions" to implement the Act, EPA must ensure SIPs meet the Act's requirements. *See North Dakota v. EPA*, 730 F.3d 750, 757 (8th Cir. 2013); *see also* RTC at 432. EPA reasonably disapproved Arkansas's SIP because it inadequately addressed Good Neighbor obligations for the 2015 ozone NAAQS. *See* Argument II.A.

Because Arkansas has not met its burden of establishing that it will likely experience irreparable harm from the Final Rule, its stay motion should be denied.

### C. The Balance of Equities and Public Interest Disfavor a Stay.

Arkansas has failed to show "that the balance of equities tips in [its] favor, and that a[] [stay] is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

Congress passed the Good Neighbor Provision to address the intractable problem of upwind states' emissions significantly contributing to pollution problems in downwind states. *See, e.g.*, *EME Homer*, 572 U.S. at 497-99. Arkansas's own methodology shows that it contributes to downwind air-quality problems, yet it proposed to do *nothing* to limit its in-state emissions. *See supra* Argument II.A.1. A stay would leave no law on the books to address these harmful emissions and would delay EPA's efforts to effectuate Congress's directive for upwind states to lower emissions as expeditiously as practicable, harming the health and welfare of citizens impacted by Arkansas's pollution. *See*

22

Birnbaum Decl. ¶¶ 9-15.  Further, staying the Final Rule only as it relates to Arkansas would result in inequities, impeding downwind states affected by Arkansas's emissions from attaining the NAAQS and effectively letting Arkansas "reap[] the benefits of the economic activity causing the pollution without bearing all the costs," contrary to Congress's intent.  *EME Homer*, 572 U.S. at 495.

Arkansas's contrary arguments are unpersuasive.  Arkansas cites EPA's delay in finalizing the Final Rule, Mot. at 20, but the only remedy for EPA's failure to meet a duty to act by a date certain is a court-ordered deadline, *see* 42 U.S.C. § 7604(a)(2).  And Arkansas's contention that the public has "a strong interest in maintaining" the Act's cooperative federalism framework, Mot. at 21, fails for the reasons described *supra* Argument II.B.

Given that Arkansas is not irreparably harmed by the Final Rule while the state's failure to address its significant contributions to downwind areas is occurring now, the balance of harms weighs heavily in favor of protecting the health and welfare of those continuing to suffer from poor air quality.

Appellate Case: 23-1320     Page: 29     Date Filed: 04/28/2023 Entry ID: 5270698

## CONCLUSION

Arkansas's stay motion should be denied or transferred, along with its petition, to the D.C. Circuit.

Respectfully submitted,

TODD KIM
Assistant Attorney General

Of Counsel:

*/s/ Jin Hyung Lee*
JIN HYUNG LEE
ALEXANDRA L. ST. ROMAIN
ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2640
jin.hyung.lee@usdoj.gov

April 28, 2023

## CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 5,170 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.

Dated: April 28, 2023

*/s/ Jin Hyung Lee*
JIN HYUNG LEE

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing EPA's response in opposition to Arkansas's motion for stay of the Final Rule on all registered counsel through the Court's electronic filing system (CM/ECF).

Dated: April 28, 2023

/s/ Jin Hyung Lee
JIN HYUNG LEE